1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| HECTOR LEONARD JARDINE, | Case No. 2:16-cv-02637-RFB-NJK |
| Petitioner, | **ORDER** |
| v. | |
| BRIAN WILLIAMS, *et al.*, | |
| Respondents. | |

Before the court for a decision on the merits is a petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 28) filed by Hector Leonard Jardine. For the reasons discussed below, this court denies the petition and a certificate of appealability.

I.    **BACKGROUND**

On December 20, 2006, the state district court for Clark County, Nevada, entered a judgment of conviction finding Jardine guilty of attempted murder with use of a deadly weapon, burglary, first-degree kidnaping with use of a deadly weapon with substantial bodily harm, and sexual assault with use of a deadly weapon. ECF No. 45-50. The court sentenced Jardine to multiple concurrent and consecutive prison terms totaling a minimum of 50 years and a maximum of life. Id.

Evidence presented at trial provides the following account of Jardine's crimes.[1] Carrie Rose, the victim, and Jardine met in May 2001 while being trained as EMTs in the United States Navy. ECF No. 45-35 at 57-58. They soon became romantically involved and continued a relationship, off and on, for roughly five years. Id. at 58-72. Sometime during the first year of their relationship, Rose found out that Jardine was married and had a child. Id. at 59. In April 2002, Rose was transferred to Japan where she stayed for three years. Id. at 61. Except for a 6-month breakup, Rose and Jardine maintained a long distance relationship while she was abroad. Id.

When Rose came back from Japan in July 2005, Jardine told her that he had divorced his wife. Id. at 65-66. Relying on that representation, Rose moved to Las Vegas to live with Jardine. Id. at 66-67. Shortly thereafter, however, Rose learned that Jardine was still married. Id. at 68. She began making plans to leave, but having just signed a lease and being financially dependent on Jardine, she remained in the apartment. Id. at 69-70. With Jardine promising that he was working on getting a divorce, Rose and Jardine eventually resumed their romantic relationship. Id. at 71-72.

In March 2006, Rose went to Florida for Spring Break. Id. at 72. While she was gone, Jardine allowed his wife and daughter to stay in Jardine and Rose's apartment. Id. That incident combined with Jardine's other conduct compelled Rose to break up with him again. Id. at 75-76. On April 19, 2006, she got herself out the lease and moved to a different apartment in the same complex, where she now worked as a leasing agent. Id. at 76-79.

For the next few weeks, Jardine would not leave Rose alone. ECF N. 45-36 at 9-10. He brought letters, cards, and gifts to Rose and called her repeatedly. Id. On several occasions, she saw him watching or following her. Id. After Jardine learned where Rose lived, her balcony door was kicked in. Id. at 12. Then, for three or four nights in a row, Jardine rang Rose's doorbell,

---

[1] The court makes no credibility findings or other factual findings regarding the truth or falsity of the evidence presented at trial. This summary is merely a backdrop to this court's consideration of the issues presented in the case. Any absence of mention of a specific piece of evidence does not signify the court overlooked it in considering Jardine's claims.

knocked on her door, and threw pebbles at her window. Id. at 16-18. Fed up with Jardine's behavior, Rose obtained a temporary protection order (TPO) and had it served on Jardine. Id. at 18.

On May 3, 2006, as Rose was leaving for school early in the morning, Jardine approached her car while she was waiting at the gate of the apartment complex. Id. at 20-21. She refused to talk to him and pulled away as soon as the gate opened. Id. While she was at school, Jardine called her several times. Id. at 21. Not feeling well, Rose left school early and returned home at 10:20 a.m. Id. at 22.

Rose locked the door behind her as she entered the apartment. Id. When she was half way up the stairs, Jardine jumped out of a closet with a knife and overtook her. Id. He held the knife to her throat and told her not to scream. Id. Jardine pushed her up the stairs and into the master bedroom, locking the door behind them. Id. He pushed her on the bed, got on top of her, then cut off her shirt and bra with the knife and took off her pants and panties. Id. After setting the knife on the nightstand, Jardine sexually assaulted Rose and, when she would not stop crying, grabbed her chin and wrenched her neck. Id. at 23.

When he was finished, Jardine retrieved the knife and moved in front of the bedroom door to prevent Rose from leaving. Id. at 23. Rose asked him repeatedly to let her go, but he told her that she had to wait until dark. Id. at 23-24. Around 4:30 p.m., Rose grabbed a curtain rod off the floor and broke a window. Id. at 25-26. Jardine flew across the room and got on top of her as she dropped the curtain rod and fell to the floor. Id. at 26. Jardine pressed the knife into her throat, then got up and left the room. Id.

When Rose tried to leave to get help, Jardine came back up the stairs and told her she was not going anywhere. Id. She then fell to the floor and pretended to die, which prompted Jardine to leave. Id. Rose dragged herself to the office of the apartment complex, where she finally collapsed before being rushed to the hospital. Id. at 27.

At trial, Jardine admitted that he entered the apartment without Rose's permission while she was gone. ECF No. 45-37 at 95. His account differed, however, in that he testified that Rose

willingly went to the bedroom with him and that they had sex twice, with Rose consenting both times. Id. at 101-12. He also testified that he did not stab Rose and suggested that the cut to her neck was the result of falling on a piece of broken glass. Id at 122. The surgeon who operated on Rose testified that her neck wound was consistent with being stabbed with a knife rather than being slashed with a piece of glass. ECF No. 54-35 at 41, 44.

On appeal, the Supreme Court of Nevada affirmed the judgment of conviction and subsequently denied Jardine's petition for rehearing. ECF No. 46-38 and 46-45. On December 3, 2009, the U.S. Supreme Court denied Jardine's petition for a writ of certiorari. ECF No. 47-7.

On November 20, 2009, Jardine filed a *pro se* petition for a writ of habeas corpus in the state district court. ECF No. 47-2. The district court denied the petition. ECF No. 47-12.  On appeal, the Supreme Court of Nevada reversed and remanded based on the district court's failure to appoint post-conviction counsel. ECF No. 47-18.

With the assistance of counsel, Jardine filed a supplemental state petition. ECF No. 47-27. The state district court denied relief. ECF No. 47-30. On June 12, 2014, the Supreme Court of Nevada affirmed the lower court's decision. ECF Nos. 48-3.

Jardine initiated this federal proceeding on November 8, 2016. ECF No. 8 at 1. Screening the petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), this Court directed Jardine to show cause why his petition should not be dismissed as untimely. ECF No. 7. Upon receiving Jardine's response, the Court determined that he had established sufficient grounds upon which the court could find his petition timely, but did not preclude respondents from raising timeliness as an affirmative defense. ECF No. 10.

After being appointed counsel, Jardine filed an amended petition on April 25, 2019. ECF No. 28. On October 1, 2019, this Court granted Jardine's unopposed request for a stay to exhaust an unexhausted claim in state court. ECF No. 38.

On December 4, 2019, the state district court denied Jardine's state exhaustion petition on procedural grounds. ECF No. 48-12. On appeal, the Supreme Court of Nevada affirmed that decision. ECF No. 48-21. After these federal proceedings resumed, respondents filed a motion to

dismiss that resulted in the dismissal of Claims 1 and 5 from Jardine's amended petition. ECF No. 75. The Court now addresses Jardine's remaining claims.

## II.    STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). The standard of review under AEDPA is set forth at 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite than that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Emil v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. "[A] federal habeas court may not" issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004); see also Miller-El, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

## III.    DISCUSSION

### A.  Claim 2

In Claim Two, Jardine alleges constitutional violations arising from the trial court's denial of a motion seeking discovery of information regarding prior false accusations of sexual misconduct made by Rose and the trial court's refusal to allow Jardine to cross-examine her on the subject. Jardine contends that the State had on obligation under Brady v. Maryland, 373 U.S. 83 (1963), to provide him with information about possible false allegations she made against other men while in the Navy. He further contends that his rights under the Confrontation Clause were violated when he was prevented from questioning Rose about the allegations.

On September 11, 2006, a little over a month before his trial, Jardine filed a discovery motion asking the court to order the State to turn over any Department of the Navy records concerning accusations of sexual misconduct or sexual harassment made by Rose. ECF No. 45-24. At a hearing on the motion three days later, the court proposed signing an order directing the Department of the Navy to provide the records.  ECF No. 45-26 at 3-4. When Jardine's counsel

expressed concern that the Department of the Navy could decide to ignore the order, the court noted that the Department was more likely to respond to a court order than a request from the district attorney. Id. Jardine's counsel suggested that Rose provide the information to the district attorney, who could then turn over the information to the defense. Id. at 4. The court ruled that it could not force Rose "to do it that way." Id.

On October 4, 2006, the State filed a motion *in limine* to preclude the defense from eliciting evidence of any prior false sexual allegations Rose made while in the Navy. ECF No. 45-35. The motion noted that a Miller hearing[2] is required before a defendant in Nevada is allowed to cross-examine a complaining witness about the witness's prior false accusations of sexual assault. Id. At the hearing on the motion, the following exchange took place:

> [DEFENSE COUNSEL]:  We have reason to believe that [Rose] has filed or made false allegations of sexual misconduct against men in the past, and one of those incidents was an incident involving a senior gunnery sergeant or a senior drill instructor while she was … stationed in North Carolina.
> …
>
> THE COURT:  Wouldn't we have to have a hearing?
>
> [DEFENSE COUNSEL]:  We will, but this allows us to relive, I guess, redirect the issue of discovery, the motion we filed about three weeks ago before the Court left.
>
> We wanted to find that information from the Department of the Navy. We've been unable to do that through our investigative efforts because we don't know the name of the individual who was involved in the misconduct allegation with Ms. Rose. Unless this Court --
>
> THE COURT:  And I said that it wasn't the State's obligation to find that for you.
>
> [DEFENSE COUNSEL]: … We're not asking the State to find that for us, Judge. Since the Court gave us that ruling on our discovery motion we've used every effort imaginable in trying to get that information ourselves. We've even talked to lieutenant colonels in the Department of the Navy over in the Inspector

---

[2] In Nevada, a complaining witness is subject to cross-examination concerning prior false accusations of sexual assault provided the defendant is able "to prove by a preponderance of the evidence, in a hearing outside the presence of the jury, that '(1) the accusation or accusations were in fact made; (2) that the accusation or accusations were in fact false; and (3) that the evidence is more probative than prejudicial.'" Brown v. State, 166, 807 P.2d 1379, 1380 (Nev. 1991) (quoting Miller v. State, 779 P.2d 87, 90 (Nev. 1989)).  If the witness denies making the accusations, the defendant "may introduce extrinsic evidence to prove that, in the past, fabricated charges were made." Miller, 779 P.2d at 89.

General's office, but they won't release that information to us without something from Ms. Rose saying that it's critical.

Now we believe that this Court has the power to compel a witness in a criminal case to turn over discovery, especially if we believe that discovery contains exculpatory evidence, and it does in this case.

ECF No. 45-32 at 6-7. Disagreeing that it had such authority, the court denied defense counsel's

discovery request and granted the State's motion *in limine*. Id. at 8-12.

The Supreme Court of Nevada addressed the claims raised in Claim 2 as follows:

The district court denied [Jardine's discovery] motion, in part. However, at the hearing on the motion, the district court agreed to sign an order telling the Department of Defense or Navy to give the requested documents to Jardine. Although the district court directed Jardine to prepare the order, no order was ever prepared or filed.

Subsequently, the State filed a motion asking the court to preclude Jardine from bringing forth evidence of any prior false sexual allegations Rose made while in the Navy. The district court granted the State's motion after a hearing on October 10, 2006. Specifically, the court order "admonish[ed] Jardine not to question the victim or any witness regarding her military time as it related to any cases in the military or any prior sexual history, other than that of the victim and the defendant." Jardine also renewed his prior motion for discovery at the October 10, 2006, hearing asking the court to order Rose to sign a release form so Jardine could receive her records. The district court denied the request.

We review a district court's decision to deny a pretrial discovery motion for an abuse of discretion.

Jardine alleges that that the district court abused its discretion by denying his motion for discovery. We disagree.

We conclude that it was incumbent on Jardine to file an order, as agreed to by the district court, for the request of Rose's records. Jardine's failure to file such an order was inadequate investigation. Jardine should have filed an order for the district court to sign and then requested an *in camera* hearing for the district court to review the personnel files before determining whether to disclose the files to the defense.

To the extent that Jardine claims that there was a Brady violation, we conclude that it was not within the authority of the district court to order Rose to turn over her military records. Moreover, we conclude that the State did not have actual or constructive possession of Rose's military records, and the State did not have the authority to force Rose to turn over her military records. As such, we conclude that Brady was not implicated.

Consequently, we conclude that the district court did not abuse its discretion in denying Jardine's pretrial discovery motion.

ECF No. 46-38 at 7-8 (footnotes omitted).

Brady requires the government to disclose "material, exculpatory, or otherwise helpful" evidence." United States v. Cano, 934 F.3d 1002, 1023 (9th Cir. 2019). "Any evidence that would tend to call the government's case into doubt is favorable for Brady purposes." Milke v. Ryan, 711 F.3d 998, 1012 (9th Cir. 2013) (citing Strickler v. Greene, 527 U.S. 263, 290 (1999)). A threshold question here is whether the State had an obligation to provide the defense with the information at issue – i.e., Rose's Navy records. In Kyles v. Whitley, 514 U.S. 419 (1995), the Supreme Court commented that Brady imposed upon the individual prosecutor "a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." 514 at 437. However, the Supreme Court relied on the fact that "the prosecutor has the means to discharge the government's Brady responsibility if he will." Id. at 438. As the Sixth Circuit has noted, "[t]hat is not necessarily the case with regard to cooperating witnesses." United States v. Graham, 484 F.3d 413, 417 (6th Cir. 2007); see United States v. Zavala, 839 F.2d 523, 528 (9th Cir. 1988) (holding that Brady did not require the government to produce the statements of various government witnesses in their probation reports).

Here, it appears that the State did not have the means to obtain Rose's Navy records without her consent. Jardine argues that the State had constructive possession of the records because Rose was the State's witness. However, the only authority he cites for this proposition is Nev. Rev. Stat. § 174.325 and State v. Tapia, 835 P.2d 22 (Nev. 1992). Neither is persuasive. Nev. Rev. Stat. § 174.325 requires the prosecuting attorney to produce "any written or recorded statements made by a witness the prosecuting attorney intends to call during the case in chief of the State," but only if the statements are "within the possession, custody or control of the State." The issue in Tapia was not the scope of the State's obligation under Brady, but instead whether the State exercised due diligence in complying with a discovery order. 835 P2d at 24. In sum, Jardine has not established that the Supreme Court of Nevada's Brady holding with respect to Rose's Navy records involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented.

Jardine's Confrontation Clause claim is also without merit. The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "[A] primary interest secured by [the Confrontation Clause] is the right of cross-examination." Douglas v. Alabama, 380 U.S. 415, 418 (1965); see also Maryland v. Craig, 497 U.S. 836, 845 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."); Davis v. Alaska, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."). A "defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986). While "the Confrontation Clause guarantees an opportunity for effective cross-examination," it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id. at 679 (internal quotation marks omitted). Accordingly, trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or marginally relevant." Id.

The Supreme Court has recognized that "[n]o decision of this Court clearly establishes that [the Miller] notice requirement is unconstitutional. Nevada v. Jackson, 569 U.S. 505, 511, (2013). Jardine agrees that the Miller procedure is in line with the Supreme Court's Confrontation Clause jurisprudence, but argues that the trial court erred by refusing to hold a hearing on timeliness grounds because Miller does not impose a time limit for providing notice or holding a hearing.

This argument is not supported by the record. At the time of the hearing on October 10, 2006, Jardine had not been able to substantiate his claim that Rose had made false allegations of

sexual misconduct while serving in the Navy. At the conclusion of the hearing, the court told

Jardine's counsel that it had done as much as it could with respect to helping him obtain Rose's

Navy records. ECF No. 45-32 at 12. The prosecutor then pointed out that Jardine had not waived

his right to a speedy trial and had said he was not going to do so. Id. The court then indicated that

that was the reason it was planning on starting the trial the following week. Id. Thus, the court

did not refuse to hold a Miller hearing on timeliness grounds, as Jardine argues. Instead, the

court did not conduct a Miller hearing because Jardine's counsel, having insufficient evidence to

substantiate his claim of prior false accusations, was not prepared to request one and Jardine was

apparently unwilling to waive his right to a speedy trial.

Requiring Jardine to satisfy the Miller requirements before questioning Rose about prior

false accusations of sexual assault was reasonable limit on cross-examination. See Van Arsdall,

475 U.S. at 679. Because he was unable to meet the requirements, the trial court did not violate

his rights under the Confrontation Clause by not permitting such questioning.[3]

Claim 2 is denied.

**B.  Claim 3**

In Claim 3, Jardine alleges that his constitutional rights were violated when the

prosecutors asked Jardine to comment on the veracity of several of the State's witnesses during

his testimony and then used his answers to disparage him and suggest that he was a liar during

closing arguments. Jardine cites the following questions and comments in relation to Anna

Livingston, his former boss:

> "You had a conversation with her in which you told her you were tired of those
> two bitches fucking with you, didn't you?" When Jardine denied making those
> comments, the prosecutor said, "She comes in here and says that that's what you
> said, then she's lying."

> "You told her that you acted like you wanted to cut yourself, and so Carrie said:
> Don't cut yourself. Stab me." When Jardine denied saying that, the prosecutor
> said, "So Anna Livingston's making all of this up."

---

[3] The Supreme Court of Nevada did not address the Confrontation Clause claim. Even so, the claim fails
under *de novo* review.

1
2

> "…you said you needed to find Liz, and when she asked you if you were going to do to Carrie what you did to Liz, your response was: I'm not sure yet…" When Jardine again denied saying that, the prosecutor said, "So if she testifies to that, she's also incorrect about that."

3    ECF No. 45-37 at 147-48, 175.

4    Jardine cites the following questions and comments in relation to Sharon Nelson, his

5    sister:

6
7

> "Okay. So when your sister testified that that's not what happened, and that she asked you if the police needed to be called, and you said: No, that's already been taken care of – your sister is not telling the truth."

8
9

> When Jardine said that he asked his sister to call the police, the prosecutor retorted, "So obviously your sister now is also not telling the truth."

10   Id. at 148-49.

11   Jardine cites the following questions and comments in relation Carrie Rose:

12
13

> "Carrie is not being truthful about that you think?" (in reference to Rose's testimony about her injuries).

14

> "Carrie is wrong about the fact that you were in a closet."

15
16

> "She testified that you left the room. She's able to get enough strength to walk into the living room, and you come back up and you say: You're not going anywhere. She's not being truthful about that?"

17
18

> "So, again, Carrie's not being truthful about that." (in reference to Rose's testimony that she had to wait for the gate to open when she left the apartment complex).

19   Id. at 154, 156, 164, 168.

20   Jardine cites the following question in relation to Jardine's ex-wife, who did not testify:

21
22

> "So if Elizabeth were to testify that she was allowed to come in and out, you allowed her to do that, that would be incorrect?"

23   Id. at 159.

24   Jardine cites the following comment in relation to Jardine's divorce:

25
26

> "So I guess it would be your testimony to this jury now that you'd be shocked to know that there have never been any divorce papers filed."

27
28

<u>Id</u>. at 151. Jardine claims that the prosecutor knew or should have known that he *had* filed for a divorce.

During closing argument, the prosecutor stated:

Does Carrie have anything to gain from coming in here and sitting up here an telling you how horrible this was?... This is all about credibility. If you think the defendant was lying, and boy, if you don't think the defendant was lying, this means that Carrie was, that his sister was, that Anna Livingston was, that his father was? Well, ladies and gentlemen, then you have no duty to do anything. I mean, that's obviously a not guilty. If all of those people came in her and lied to you, then absolutely. But do you really think that's what happened? ... This is all about credibility... [and] the defendant is not telling you what really happened.

<u>Id.</u> at 217-18.

The Supreme Court of Nevada addressed the claim raised in Claim 3 as follows:

Jardine also argues that the district court erred in failing to remedy prosecutorial misconduct when the prosecutor asked Jardine to testify regarding the veracity of the State's witnesses by asking him during cross- examination if they were lying.

Generally, prosecutors are prohibited from asking a defendant whether other witnesses have lied and "from goading a defendant to accuse other witnesses of lying, except where the defendant during direct examination has directly challenged the truthfulness of those witnesses."

Initially, we note that Jardine failed to object to the prosecutor's questioning at trial. Generally, the failure to object to prosecutorial misconduct precludes appellate review. However, we may consider plain error that affects a defendant's substantial rights.

While we conclude that it was prosecutorial misconduct for the State to repeatedly question Jardine on the veracity of its witnesses rather than point out inconsistencies in Jardine's own testimony, the prosecutorial misconduct did not affect Jardine's substantial rights in light of the overwhelming evidence of his guilt. Because the prosecutorial misconduct did not amount to plain error, we conclude that no relief is warranted on this basis.

ECF No. 46-38 at 9-10 (footnotes omitted).

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Darden v.</u>

1    Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643

2    (1974)). A court must judge the remarks "in the context in which they are made." Boyde v.

3    California, 494 U.S. 370, 385 (1990). The fairness of a trial is measured "by considering, *inter*

4    *alia*, (1) whether the prosecutor's comments manipulated or misstated the evidence; (2) whether

5    the trial court gave a curative instruction; and (3) the weight of the evidence against the

6    accused." Tan v. Runnels, 413 F.3d 1101, 1115 (9th Cir. 2005). "[P]rosecutorial misconduct[ ]

7    warrant[s] relief only if [it] 'had substantial and injurious effect or influence in determining the

8    jury's verdict.' " Wood v. Ryan, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting Brecht v.

9    Abrahamson, 507 U.S. 619, 637-38 (1993)).

10        As general matter, prosecutors are not permitted to ask defendants during cross-

11    examination to comment on the veracity of other witnesses. United States v. Alcantara-Castillo,

12    788 F.3d 1186, 1191 (9th Cir. 2015). Thus, it was improper for the prosecutor to ask Jardine

13    whether other witnesses were lying or not telling the truth. However, the prosecutor's conduct

14    did not render Jardine's trial fundamentally unfair. Read in context, most of the prosecutor's

15    questions sought to clarify Jardine's testimony rather than elicit an opinion regarding the other

16    witnesses' credibility. Jardine's response to all but one of the questions cited above was to

17    merely confirm his own testimony. In the other instance, he said he did not know whether a

18    witness was lying. And, while the outcome of the trial depended, to a large extent, on whether

19    the jury believed Jardine's version of events or Rose's, the circumstances surrounding the events

20    rendered Jardine's version implausible.[4]

21    _____

      [4] The prosecutor's comment regarding Jardine's divorce did not have a significant impact on the outcome
22    of the trial. After making the comment, the prosecutor showed Jardine a document and asked, "Does that
      refresh your recollection as to whether there was anything done in court on any kind of divorce
23    proceeding?" ECF No. 45-37 at 151-52. Jardine responded that the document showed that nothing had
      been filed, but reiterated his claim that he had initiated custody and divorce proceedings. Id. It is not clear
24    in the record what document the prosecutor presented. And, the document that Jardine now relies upon to
      show that he had filed for a divorce was not before the Supreme Court of Nevada when it ruled on
25    Jardine's prosecutorial misconduct claim. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (holding
      that federal "review under § 2254(d)[ ] is limited to the record that was before the state court that
26    adjudicated the claim on the merits"). In any case, the issue of when and whether Jardine had filed for a
      divorce was a minor issue in the case, and his credibility would not have been appreciably undermined by
27    the prosecutor's comment.

28

Finally, this court is not convinced that the prosecutor's closing argument was improper. Jardine claims that it constituted witness vouching, however, vouching consists of "placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993). It is not vouching, however, for the prosecutor to argue the truthfulness of a witness's statements based on the record. Id. at 1279. In a trial where a jury must decide "which of two conflicting stories is true, it may be reasonable to infer, and hence to argue, that one of [the] two sides is lying." United States v. Alcantar-Castillo, 788 F.3d 1186, 1195 (9th Cir. 2015) (quotation omitted). In addition, attorneys are given latitude in the presentation of their closing arguments; "courts must allow the prosecution to strike hard blows based on evidence presented and all reasonable inferences therefrom." Ceja v. Stewart, 97 F.3d 1246, 1253-54 (9th Cir. 1996) (quotation omitted).

Jardine cites United States v. Sanchez, 176 F.3d 1214 (9th Cir. 1999), to support his due process claim. In that case, the court held that the prosecutor improperly compelled Sanchez to give his opinion regarding the credibility of a deputy marshal, but it did not reverse Sanchez's conviction on that ground. Sanchez, 176 F.3d at 1220. The case also involved the prosecutor vouching for government witnesses, but the prosecutor's comments were far more egregious than the comments in this case. Among other improper comments, the prosecutor invoked the reputation of the Department of Justice and stated that "if the system doesn't work in this case, it won't work in any case, and the entire fabric of how this works would crumble." Id. at 1224. The court noted that prosecutors must generally avoid statements "to the effect that, if the defendant is innocent, government agents must be lying." Id. (internal quotation marks omitted). Ultimately, the court reversed because of the cumulative effect of the prosecutor relying on inadmissible hearsay, disclosing to the jury that Sanchez's wife had exercised her privilege not to testify against her husband, improperly vouching for the government's witnesses, and telling the jury it had a duty to convict. Id. at 1225. Thus, Sanchez bears little resemblance to this case.

The state court's rejection of Claim 3 was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1),(2).

Claim 3 is denied.

**C.  Claim 4**

In Claim 4, Jardine alleges that his constitutional rights were violated when the trial court allowed the admission of evidence that Rose had obtained a TPO against him, which reversed a prior decision to exclude it. Jardine notes that evidence of a TPO is unreliable and prejudicial because a TPO is based solely on the application of the person seeking the order and the standard of proof is minimal. Prior to trial, the State agreed that it would not introduce evidence of the TPO unless Jardine claimed he had a right to be in Rose's apartment. ECF No. 45-25 at 3. At the end of the first day of trial, the prosecutor argued that the TPO evidence was rendered relevant by Jardine's defense that Rose consented to sex with him. ECF No. 45-35 at 93-94.  The court agreed, but allowed only limited questioning about the TPO, prohibited it from being introduced as an exhibit, and required Rose to admit that Jardine did not make any threats of violence towards her. Id. at 95-101. Jardine argues that the State was on notice before trial that Jardine planned to argue the sex was consensual and that his constitutional right to a fair trial was violated by admission of the TPO evidence which was admitted without a limiting instruction.

The Supreme Court of Nevada addressed the claim raised in Claim 4 as follows:

> Jardine argues that the district court abused its discretion in admitting the bad act evidence regarding his TPO and that the district court's failure to give a limiting instruction constitutes reversible error. We disagree.
>
> "The trial court's determination to admit or exclude evidence of prior bad acts is a decision within its discretionary authority and is to be given great deference. It will not be reversed absent manifest error."[9]
>
> Before admitting evidence of a defendant's prior bad acts, the district court must conduct a hearing outside the presence of the jury and make the following three determinations on the record: (1) whether the evidence is relevant, (2) whether the prior bad act is proven by clear and convincing evidence, and (3) whether the danger of unfair prejudice substantially outweighed the evidence's probative value.[10] Failure to conduct a Petrocelli hearing is reversible error, unless "(1) the record is sufficient for this court to determine that the evidence is

admissible under the test for admissibility of bad acts evidence set forth in <u>Tinch</u>; or (2) where the result would have been the same if the trial court had not admitted the evidence."[11]

Once evidence of prior bad acts is admitted, we have concluded that the prosecutor has a duty to request that the jury be instructed on the limited use of the evidence.[12] Further, the district court should raise the issue *sua sponte* when the prosecutor fails to request the instruction.[13] The failure of the district court to issue a limiting instruction will be reviewed for harmlessness under NRS 178.598.[14]

Here, the district court failed to conduct a <u>Petrocelli</u> hearing and failed to give a limiting instruction on the use of the prior bad act evidence. Nevertheless, we conclude that the errors were harmless because the TPO evidence was admissible under <u>Tinch</u> and failure to instruct in this case did not substantially affect the verdict given the overwhelming evidence of guilt.

---

[9] <u>Braunstein v. State</u>, 40 P.3d 413, 416 (Nev. 2002).

[10] <u>Tinch v. State</u>, 946 P.2d 1061, 1065 (Nev. 1997); <u>Petrocelli v. State</u>, 692 P.2d 503 (Nev. 1985).

[11] <u>Rhymes v. State</u>, 107 P.3d 1278 (Nev. 2005) (quoting <u>Qualls v. State</u>, 961 P.2d 765, 767 (Nev. 1998)).

[12] <u>Tavares v. State</u>, 80 P.3d 1128, 1132 (Nev. 2001).

[13] <u>Id</u>.

[14] <u>Id</u>. at 1132.

ECF No. 46-38 at 10-11.

"[I]t is not the province of the federal habeas court to reexamine state court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991). Thus, as a general rule, federal courts may not review a trial court's evidentiary rulings. <u>Crane v. Kentucky</u>, 476 U.S. 683, 689 (1986). A state court's evidentiary ruling can be grounds for federal habeas relief only if it is so fundamentally unfair as to violate due process. <u>See</u> <u>Dillard v. Roe</u>, 244 F.3d 758, 766 (9th Cir. 2001); <u>see also</u> <u>Windham v. Merkle</u>, 163 F.3d 1092, 1103 (9th Cir. 1998) (The federal court's "role is limited to determining whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process."). "The Supreme Court has established a general principle that evidence that 'is so extremely unfair that its admission violates

fundamental conceptions of justice' may violate due process." <u>Alberni v. McDaniel</u>, 458 F.3d 860, 864 (9th Cir. 2006) (quoting <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990)).

The TPO evidence was probative because it tended to show that Rose was less likely to have consented to sex with Jardine. And, while the evidence was prejudicial, it was not *unduly* prejudicial. <u>See</u> <u>United States v. LeMay</u>, 260 F.3d 1018, 1026 (9th Cir. 2001) (recognizing that all evidence tending to prove the prosecution's case is prejudicial but "such evidence can amount to a constitutional violation only if its prejudicial effect far outweighs its probative value"). Also, the prejudicial impact of the evidence was mitigated by Rose's testimony at trial that Jardine had never threatened to harm her and that she obtained the TPO because Jardine would not leave her alone. ECF No. 45-36 at 18-19. Because the admission of the evidence was not so unfair that it violated fundamental conceptions of justice, the decision of the Supreme Court of Nevada is entitled to deference under 28 U.S.C. § 2254(d).

Claim 4 is denied.

**C.  Claim 6**

In Claim 6, Jardine alleges that his custody violates his constitutional rights because his trial counsel provided ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

Under the first <u>Strickland</u> prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. <u>Id</u>. at 687-88. Under the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694. The reviewing court need not consider the performance component before the prejudice component "or even address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id</u>. at 697.

1        **1.** *Claim 6(A)*

In Claim 6(A), Jardine alleges that his trial counsel was ineffective by not filing a pretrial petition for a writ of habeas corpus with respect to the kidnapping charge. Two weeks before trial, trial counsel filed a motion to dismiss the kidnapping charge because "the State failed to show that an independent crime of kidnapping occurred." ECF No. 45-28 at 7-8. In the motion, counsel argued that "any movement of Ms. Rose into the bedroom is incidental to the original allegation of sexual assault or attempt murder, without an increased danger to her" and that "there were no other actions taken coupled with the movement that substantially increased the risk of harm." Id. In addition, counsel argued, "[n]o facts were alleged during the preliminary hearing which would support evidence of kidnapping against Ms. Rose and as such the count should be dismissed." Id. The motion was denied because the trial court agreed with the State's contention that Jardine's arguments should have been raised in a pretrial petition for a writ of habeas corpus. ECF No. 45-29 at 34; ECF No. 45-32 at 5-6.

The Supreme Court of Nevada addressed the claim raised in Claim 6(A) as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to file a pretrial petition for a writ of habeas corpus arguing that the kidnapping charge was improper because the movement of the victim did not substantially increase the risk of harm. Appellant acknowledges counsel moved to dismiss the kidnapping charge prior to trial, but he argues that the proper procedure to challenge that charge was via a petition for a writ of habeas corpus. Appellant fails to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. "A separate charge of first degree kidnaping is proper if the movement of the victim is not merely incidental to the associated offense and it results in substantially increased risk of harm." Curtis D. v. State, 98 Nev. 272, 274, 646 P.2d 547, 548 (1982) (citing Wright v. State, 94 Nev. 415, 581 P.2d 442 (1978). In this case, appellant took the victim at knifepoint upstairs to a bedroom, locked the bedroom door behind them, and then forced her to stay in that bedroom for a substantial period of time. Moving the victim to a more secluded room and locking her in that room substantially increased the risk of harm. Under these circumstances, appellant fails to demonstrate that reasonably diligent counsel would have filed a pretrial petition for a writ of habeas corpus challenging the kidnapping charge or that a petition had a reasonable probability of altering the outcome of the proceedings as such a petition would have been futile. See Ennis v. State, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006). Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

ECF No. 48-3 at 3-4.

Under Nevada law, "the questions of whether the movement of the victim was incidental to the associated offense and whether the movement increased the risk of harm to the victim are questions of fact to be determined by the jury in all but the clearest cases." Langford v. State, 95 Nev. 631, 638–39 (1979). In addition, probable cause to support a criminal charge "may be based on slight, even 'marginal' evidence." Sheriff v. Hodes, 606 P.2d 178, 180 (Nev. 1980) (internal citations omitted)). Jardine cites no authority to support the proposition that a properly-filed pretrial petition for a writ of habeas corpus stood a reasonable chance of succeeding had counsel filed one. Thus, this court must defer the decision of the state supreme court. 28 U.S.C. § 2254(d).

Claim 6(A) is denied.

### 2. *Claim 6(B)*

In Claim 6(B), Jardine alleges that his trial counsel was ineffective by failing to obtain Rose's military records. Trial counsel's efforts to obtain military records that would have allegedly shown that Rose had made false accusation of sexual misconduct are recounted in the discussion of Claim 2, above. As noted, the trial court instructed counsel to prepare an order directing the Department of the Navy to provide him with Rose's Navy records. ECF No. 45-26 at 3-4. Jardine contends that counsel's failure to prepare such an order constituted ineffective assistance of counsel.

The Supreme Court of Nevada addressed the claim raised in Claim 6(B) as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to obtain evidence from the Navy regarding false allegations of sexual misconduct the victim made while she served in the military. Appellant fails to demonstrate that he was prejudiced. Appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel sought these records as appellant does not demonstrate that these records actually exist and that any records discussing the victim's sexual history would have been admissible at trial. See NRS 50.090; see also Miller v. State, 105 Nev. 497, 502,779 P.2d 87, 90 (1989) (discussing that prior to admission of a victim's prior sexual abuse allegation, a defendant must establish by a preponderance of the evidence that the victim made an accusation, the accusation was false, and that the evidence is more probative than prejudicial). Appellant also fails to demonstrate a reasonable probability of a different outcome at trial had counsel obtained these records as there was overwhelming evidence that appellant sexually assaulted the victim and attempted to murder her.

Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

ECF No. 48-3 at 4.

On direct appeal, the Supreme Court of Nevada noted that trial counsel's failure to submit the order for production of the evidence constituted "inadequate investigation." ECF No. 46-38 at 8. This supports Jardine's claim of deficient performance, but the court was not addressing counsel's conduct under the <u>Strickland</u> standard. In addition, trial counsel commented at the October 10, 2006, hearing that he had "used every effort imaginable in trying to get that information," but the Navy "[wouldn't] release that information to us without something from Ms. Rose saying that it's critical." ECF No. 45-32 at 7. Thus, trial counsel may have believed, or been advised by the Navy, that a state court order was not sufficient to obtain the records.[5] In any case, Claim 6(B) fails because Jardine cannot meet <u>Strickland</u>'s prejudice prong.

As the Supreme Court of Nevada noted, Jardine makes no showing that Rose's military records would have shown that she had made false allegations of sexual misconduct while in the Navy. The record before this court contains only counsel's wholly unsubstantiated statement at they had "reason to believe that [Rose] has filed or made false allegations of sexual misconduct against men in the past, and one of those incidents was an incident involving a senior gunnery sergeant or a senior drill instructor while she was … stationed in North Carolina." ECF No. 45-32 at 6-7. The Supreme Court of Nevada's rejection of Jardine's ineffective assistance of counsel claim was not objectively unreasonable because he has not cited any evidence to support a <u>Strickland</u> prejudice finding. <u>See</u> <u>Wong v. Belmontes</u>, 558 U.S. 15, 27 (2009) ("<u>Strickland</u> places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

Claim 6(B) is denied.

**3.  *Claim 6(C)***

---

[5] The trial court acknowledged this possibility at the September 2006 hearing. ECF No. 45-26 at 3-4.

1    In Claim 6(C), Jardine alleges that his trial counsel was ineffective by failing to object to

2    the prosecutor's continued questioning of him about the veracity of other witnesses. Jardine

3    notes that his counsel stood silent when the exchanges recounted above occurred, which gave the

4    prosecutor free reign to improperly suggest to the jury that Jardine was lying and Rose was

5    telling the truth. Jardine also argues that counsel's failure to object prejudiced his direct appeal

6    because it resulted in the state supreme court reviewing the improper questions under a plain

7    error standard.

8        The Supreme Court of Nevada addressed the claim raised in Claim 6(C) as follows:

9            [A]ppellant argues that his trial counsel was ineffective for failing to
         object when the State asked appellant during trial if other witnesses were lying.
10        Appellant fails to demonstrate that he was prejudiced. The challenged questions
         were considered on direct appeal under a plain error standard and this court
11        concluded that the questions did not affect appellant's "substantial rights in light
         of the overwhelming evidence of his guilt." Jardine v. State, Docket Nos. 48736
12        and 48737 (Order of Affirmance, December 19, 2008). As there was
         overwhelming evidence of appellant's guilt presented at trial, appellant fails to
13        demonstrate a reasonable probability of a different outcome at trial had counsel
         objected to the State's questions regarding the veracity of the other witnesses.
14        Therefore, the district court did not err in denying this claim without conducting
         an evidentiary hearing.

15

16    ECF No. 48-3 at 4-5.

17        For reasons discussed above in relation to Claim 3, the prosecutor's questions about the

18    veracity of other witnesses and Jardine's responses thereto did not significantly impact the

19    fairness of Jardine's trial. With respect to possible prejudice on appeal, the prosecutor's

20    misconduct would have been subject to harmless-error review under Nev. Rev. Stat. § 178.598

21    had trial counsel objected at trial. See Daniel, 78 P.3d at 904. The Supreme Court of Nevada

22    concluded on direct appeal that "the prosecutorial misconduct did not affect Jardine's substantial

23    rights in light of the overwhelming evidence of his guilt." ECF No.46-38 at 10. There is not

24    reasonable probability that the court would have reversed Jardine's conviction under the

25    harmless error standard. See Nev. Rev. Stat. § 178.598 ("Any error, defect, irregularity or

26    variance which does not affect substantial rights shall be disregarded."). For this court to grant

27    habeas relief, it would need to conclude that the Supreme Court of Nevada's decision regarding

28

Strickland prejudice "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. That is plainly not the case.

Claim 6(C) is denied.

### 4. *Claim 6(D)*

In Claim 6(D), Jardine alleges that his trial counsel was ineffective by failing to adequately investigate his case. He cites three deficiencies in this regard: (1) failure to obtain and present evidence of Jardine's ongoing divorce, (2) failure to hire experts to rebut the State's evidence, and (3) failure to obtain Rose's phone records.

#### a. Divorce Evidence

Jardine claims that counsel was ineffective by not being prepared to counter the prosecutor's effort to show that Jardine was lying about having initiated divorce proceedings. Jardine claims that effective counsel would have to been able to rehabilitate Jardine's testimony on this point, which in turn would have demonstrated that Jardine was being truthful on other matters.

The Supreme Court of Nevada addressed this claim as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to discover that appellant had actually filed for divorce from his wife prior to the incident with the victim. Appellant fails to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Appellant testified that he hired a divorce attorney and that he believed the divorce process had been initiated. Appellant fails to demonstrate that reasonably diligent counsel would have sought further evidence to bolster this testimony as it did not provide a defense to appellant's actions with respect to the victim. Appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel further investigated appellant's divorce proceedings as there was overwhelming evidence presented that appellant sexually assaulted the victim and attempted to murder her. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

ECF No. 48-3 at 5-6.

As discussed in the footnote above, the question of whether Jardine was lying about having initiated divorce proceedings came up during his cross-examination. When the prosecutor attempted to impeach Jardine with a document that purportedly showed he had not initiated

divorce proceedings, Jardine continued to insist that he had. ECF No. 45-37 at 151-52. Jardine presented documents in his state post-conviction proceedings indicating that he had, in fact, filed divorce papers in March 2006, effected service on his then wife in May 2006, and obtained a default against her in September 2006. ECF No. 47-27 at 15-17.

The prosecutor effectively impeached Jardine regarding several matters during cross-examination, such as his claim that Rose told him she wanted to meet and talk with him on the day of the incident, his claim that he had asked his sister to call 911, his statements to Anna Livingston, and his claim that he did not stab Rose in the neck. ECF No. 45-37 at 144-49, 161-62. Placed in context, the prosecutor's inquiry about whether Jardine had initiated divorce proceedings did not appreciably undermine Jardine's credibility. Similarly, rehabilitating his testimony on this matter would not have significantly added to his credibility. Thus, the Supreme Court of Nevada reasonably concluded that Jardine failed to meet the Strickland prejudice requirement. This court must defer to that decision. 28 U.S.C. § 2254(d).

b.  Experts

Jardine claims that counsel was ineffective by not consulting or retaining experts to rebut the State's evidence. He notes in his petition that he "zealously denied both the kidnapping and the sexual assault allegations" and "further testified that Rose's injuries were accidental." ECF No. 28 at 37-38. According to Jardine, his "theory of defense in this case is precisely the kind of theory that compels retaining or at least consulting with an expert." Id. Jardine makes a vague reference to a "medical expert," presumably to rebut the surgeon's testimony about the wound to Rose's throat, but otherwise fails to even hint at what experts counsel should have consulted or the type of testimony they would have been able to provide. Thus, the claim fails on *de novo* review. See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (no ineffective assistance of counsel for failing to retain expert where petitioner did not offer evidence that expert would have testified); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) (speculation about unpresented evidence, including expert testimony, is not enough to establish prejudice from ineffective assistance); Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th Cir. 1995) (absent a specific account

of what beneficial evidence would have been revealed by further investigation, petitioner cannot meet the prejudice prong of <u>Strickland</u>).

Claim 6(D) is denied.

### c. Phone Records

Jardine claims that counsel was ineffective by not obtaining Rose's phone records to establish that Rose called him on the day of the incident, which would have rebutted her testimony and corroborated his. Here again, Jardine fails to demonstrate that the evidence counsel failed to obtain would have supported his claim. Thus, this claim also fails on *de novo* review. <u>See</u> <u>Hendricks</u>, 70 F.3d at 1042.

## IV.    CONCLUSION

For the reasons set forth above, Jardine's petition for habeas relief is denied.

This is a final order adverse to a habeas petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability ("COA"). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); <u>Turner v. Calderon</u>, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. <u>Id</u>.

Having reviewed its determinations and rulings in adjudicating Jardine's petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Jardine's habeas claims.

**IT IS THEREFORE ORDERED** that Jardine's amended petition for writ of habeas corpus, (ECF No. 28), is **DENIED**. The Clerk shall enter judgment accordingly and close this case.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Jardine's motion for extension of time, (ECF No. 91), is **GRANTED** *nunc pro tunc* as of May 16, 2024.

**DATED:** March 28, 2025.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

26